AMERICAN R. R. CO. OF PORTO RICO

*v.*

CENTRAL SAN CRISTOBAL.

Law, No. 546.

Plaintiff, a railroad corporation, contracted with defendant, a sugar company, to build for the latter a short piece of railway over the route covered by the former's franchise, at actual cost, that being, under the circumstances, mutually advantageous. The contract did not authorize plaintiff to sublet the work, but it nevertheless did so. Held: That defendant is not bound for anything above actual cost, and that the subcontractor's profit was no part of such cost.

Opinion filed January 9, 1909.

American R. Co. v. Central San Cristobal.

*Mr. Francis H. Dexter,* attorney for plaintiff.

*Mr. Edward S. Paine,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

On May 16, 1908, this cause was tried before the court and a jury. A verdict was rendered in favor of plaintiff in the sum of $10,825.12. Finding in this particular sum was evidently an error of the jury, as the exact amount sued for was $10,-870.58. Thereafter, on the issue raised by a motion for a new trial, as will be seen by our opinion filed under date of July 31, 1908, we set that verdict aside, for the reasons given in the opinion, unless, within forty days, plaintiff should remit of record one half the amount. As will be seen by that opinion, this action of the court was in the nature of a compromise to save the expense of a new trial. It transpired, however, that plaintiff refused so to do, as appears from its declination filed in that behalf under date of August 28, 1908. Immediately thereafter an order was entered restoring the case to the docket. Thereupon, the parties filed their stipulation waiving a jury and agreeing that the cause should be tried by the court alone.

On the 28th day of December, 1908, the new trial was had before the court alone, counsel for the respective parties introducing the transcript from the stenographer's notes of the evidence taken at the former trial as the evidence in this case, as well as the exhibits introduced on said former trial.

The cause is therefore before us now on the merits. We have again gone over the entire transcript of the evidence, and have again read the exhibits. We cannot see any reason to change

our findings of fact as set out in our former opinion, save that we recede from the position therein taken, that there was probably some balance due to the plaintiff, and now find, after such examination, that there is in fact nothing due to the plaintiff. It appears from a letter introduced in evidence from the manager of this railroad company to the manager of this sugar company, dated April 1, 1906, just about the time this work began, that Mr. G. Servajean, who, it is claimed, did the work as a subcontractor under plaintiff, was the assistant manager and chief engineer of the plaintiff company.

· After a most careful examination of the contract, we cannot see that, by its terms, plaintiff was authorized to sublet the work mentioned therein to anybody, much less to do so and charge a profit for a subcontractor to defendant. We think we erred in not so instructing the jury as to the contract on the former trial. The whole tenor of the contract and the dealings of the parties is, as we think, that the plaintiff was to build this road for the defendant at actual cost of material and labor. This arrangement was mutually advantageous. Plaintiff had a franchise permitting it to build such a road. Defendant had no such franchise, but had a sugar central in connection with which it required some railroad to haul the cane to its plant. Because the location of the proposed piece of railroad would answer as a portion of the railroad plaintiff had a franchise to build, enabled the parties to make this arrangement. Plaintiff evidently wanted to be sure that the railroad would be built in accordance with its own franchise, and wanted to be sure that, when it was built, it would be such a railroad as it could use as a portion of its own main line when it built up to it from other sections of the island; so therefore the contract was

American R. Co. v. Central San Cristobal.

mutually beneficial, and a profit concerning it, as we see it, was not considered as an element in the transaction.

True it is that, about the time of the entering into the contract, the engineer of the plaintiff made an estimate of the possible cost, and figured that the first mile would not exceed $4,500 per kilometer, or about $6,000 per mile, and that the second portion would probably cost not to exceed $4,830 per kilometer, or about $6,500 per mile. This estimate was not introduced in evidence, so it does not appear whether it was for the grading alone or was intended to include the ties, steel, and bridges; judging from the evidence, we would not be surprised if it in fact included both, as the railroad is only a meter gauge. Defendant, at that time, had complete knowledge of the cost of grading such a railroad in that vicinity, having previously built for its own use many miles of similar work, and it is unthinkable that, if this estimate was understood to include only the grading, and was to be actually binding between the parties, defendant would have signed it. However, defendant's manager testified that when the contract was made, knowing that they would, under its terms, get the material, such as timber, ties, rails, etc., at actual cost, it did not occur to him to be to his disadvantage to let a large estimate for the grading go in, because he knew what such a railroad would cost anyway, his company having built railroad there before. The defendant's assistant manager, Mr. Prescott, testified that he had built 10 miles of railroad not quite so expensive as this, in connection with this same plant and in the district, and that it cost about $8,000 per mile complete, save for rolling stock.

As can be seen from our former opinion, defendant has already paid for all the material, such as ties, rails, etc., used in

and about the construction of the 2¾ miles of railroad con-
structed by plaintiff under this contract, and for all the freight
and handling charges thereof, and, in addition, has paid enough
more to make in all almost $33,000, or what figures up, as we
stated in our former opinion, practically $12,000 per mile for
a railroad which the evidence shows to be, and we hold and find,
is not worth, and did not actually cost, to exceed $10,000 per
mile.

As stated, defendant, at all times in this case, refused to
acquiesce in any arrangement the plaintiff might make with its
manager, Mr. Servajean, and simply made advances to the
plaintiff itself or to said Servajean on plaintiff's order, but con-
tinually demanded and received bills of lading showing cost
and freight charges of materials, and demanded itemized pay
rolls and other costs of construction, but the latter were never
furnished to it.  At the end of all the work, plaintiff presented
a lump bill, showing a balance of $10,870.58, which defendant
promptly refused to pay, and, instead, demanded an itemized
account of the charges for construction work, which plaintiff
refused to furnish.  This bill simply showed lump payments
made to this man Servajean for the construction work, amount-
ing to many thousands of dollars.

There is no doubt whatever in our minds that defendant has
fully and completely paid for this railroad as delivered to it
under its contract, and has probably considerably overpaid for
the same.  At any rate, we hold that it was the duty of plain-
tiff to prove its case, and to show that the money it demanded
of defendant, or claimed to have paid out on its account, was
in fact paid out for materials or actual cost of construction
of this railroad under the terms of the contract, and not for

profits to any alleged subcontractor. This they have failed to do.

Neither is there any doubt in our mind that this claimed balance of $10,870.58 is entirely made up of alleged profits which this plaintiff railroad company attempts to charge against defendant, and alleges that it has paid the same to its own manager as a subcontractor. This is made manifest from a letter under date of January 29, 1908, written to the manager of defendant by counsel for plaintiff, the second paragraph of which letter reads: "This balance amounts to over $10,000. Mr. Duval informs me that you object to paying the same, on the ground that he has not furnished you with an itemized account thereof. It appears that this balance is a fair and reasonable contractor's profit, earned by the contractor, Mr. Servajean, with whom and by your consent a contract was made," etc.

As stated, we find, as matter of law, that the contract between the parties does not authorize the subletting of the work in the sense here contended for, and we further find, as matter of fact, from the evidence in the case, that the defendant never did consent to any such subletting, if in fact it ever was made. Such a contract, if made, is not evidence, nor was it even offered. Therefore, finding and believing as we do from the evidence, that this plaintiff railroad company has been fully paid, and as this trial is *de novo*, our verdict will be for the defendant with costs, and a judgment will be entered accordingly, and it is so ordered.